**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CMC GH SISAK D.O.O. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-1357 |
| | ) | |
| v. | ) | Magistrate Judge Robert C. Mitchell |
| | ) | |
| PTC GROUP HOLDINGS CORP, and PTC | ) | |
| SEAMLESS TUBE CORP. | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

## I. RECOMMENDATION

Presently pending is Defendant PTC Group Holdings Corp. ("PTC") Motion to Dismiss Counts II-VIII of Plaintiff CMC GH Sisak D.O.O.'s ("CMC") Amended Complaint, with prejudice, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated herein, it is respectfully recommended that the motion be granted in part and denied in part.

## II. REPORT

### A. Factual Allegations and Procedural Background

This action was commenced upon the filing of a Complaint by CMC on October 19, 2015 [ECF No. 1]. On November 25, 2015, PTC filed its first Motion to Dismiss and Brief in support [ECF No. 12, 14]. Plaintiff filed a Response in Opposition to the Motion to Dismiss [ECF No. 24] to which Defendant PTC fled a Reply. [ECF No. 25].

On February 12, 2016, CMC filed a Motion for Leave to File Amended Complaint with Brief in Support. [ECF Nos. 27, 28]. The basis for the requested amendment was to add a new party, and the argument in support thereof was as follows. When CMC initially filed its

Complaint on October 19, 2015, PTC's wholly-owned subsidiary, PTC Seamless Tube Corp. f/k/a/ PTC Alliance Pipe Acquisition, LLC ("Seamless"), was a debtor in a Chapter 11 proceeding in the United States Bankruptcy Court for the Western District of Pennsylvania at *In re PTC Seamless Tube Corp.,* Case No. 15-21445-TPA. But for the bankruptcy, CMC argued, it could have also sued Seamless for its breach of contract. While a bankruptcy debtor, Seamless was subject to an automatic stay under 11 U.S.C. § 362(a), which "operates as a stay, applicable to … the commencement … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the bankruptcy] title." 11 U.S.C. § 362(a)(1). The above-referenced bankruptcy proceeding and a related adversary proceeding both had ended: the bankruptcy case was closed on February 16, 2016. *In re PTC Seamless Tube Corp*., No. 15-21445-TPA (Bankr. W.D. Pa.) [ECF No. 714]. The adversary proceeding was closed on February 12, 2016. *Id.,* [ECF No. 713]. Therefore, CMC sought leave to file the Amended Complaint to assert claims for breach of contract and piercing the corporate veil against Seamless. The request to amend was also an effort to address PTC's earlier argument that the original Complaint be dismissed because Seamless is both a necessary and indispensible party pursuant to Fed. R. Civ. P. 19.

PTC did not oppose the Motion for Leave to File Amended Complaint. [ECF No. 30 at ¶ 6]. Accordingly by Order dated February 19, 2016 the Court granted the Motion for Leave to File the Amended Complaint [ECF No. 31] and dismissed as moot without prejudice the then-pending Motion to Dismiss the original complaint. [ECF No. 32]. On February 22, 2016, Plaintiff filed its First Amended Complaint. [ECF No. 33]. PTC filed the now-pending Motion to Dismiss Counts II-VIII on March 7, 2016, with Brief in Support. [ECF No. 37, 38]. Seamless has not joined in the motion. CMC has filed a Brief in Opposition [ECF No. 40], to which PTC

has replied. [ECF No. 41]. The matter is now ripe for disposition.

We have jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

The allegations of the Amended Complaint are as follows. Plaintiff CMC, is a limited liability company organized and existing under the laws of the Republic of Croatia. [Doc. 33 at ¶ 1]. CMC is a wholly owned subsidiary of Commercial Metals Company, a corporation organized under the laws of the State of Delaware. [ECF No. 33 at ¶ 2]. Defendant PTC Group Holdings, Corp. ("PTC") is a corporation organized under the laws of the State of Delaware with its corporate offices located in Wexford, PA. [ECF No. 33 at ¶ 3]. Defendant PTC Seamless Tube Corp. ("Seamless") is a corporation organized under the laws of the State of Delaware with its corporate offices located in Wexford, PA.

On or about June 12, 2012, PTC caused Seamless to enter into a Purchase Agreement with CMC in which CMC agreed to "sell, convey, transfer, and assign" to Seamless certain assets located at 44010 Sisak, B. Kavurica 12, Croatia, and in which Seamless and PTC agreed to "purchase and accept" the assets at that same location. Seamless and PTC also agreed and represented that the assets would "be removed and exported by [Seamless], the exporter of record, from Croatia." [ECF No. 33 at ¶ 8]. The Purchase Agreement is attached to the Amended Complaint as Exhibit A. [ECF No. 33-1]. CMC further alleges that the negotiations and other business dealings between Plaintiff and Seamless were under the control and at the direction of PTC; any promises and actions undertaken by Seamless were directed and/or were undertaken by PTC. CMC further alleges it was relying on representations and was induced to act based upon representations and promises actually made by PTC and/or at PTC's direction, including PTC's promise to pay amounts due and owing under the Purchase Agreement and the Side Agreement. [ECF No. 33 at ¶ 9]. CMC further alleges that Seamless and PTC agreed and

represented that Value Added Tax ("VAT") liability was not applicable to the Purchase Agreement "because the Acquired Assets will be exported from Croatia by [Seamless] as the exporter of record," citing the Purchase Agreement at Sec. 8. [ECF No. 33 at ¶ 10]. The Purchase Agreement states:

> [n]otwithstanding the foregoing, to the extent (i) certain of the Acquired Assets [we]re not exported or (ii) Seamless'] removal and export plan, or the timing of the export of the Acquired Assets from Croatia, affect the VAT tax liability, [Seamless] and Seller acknowledge and agree that [Seamless] shall be fully responsible for any and all VAT liability and for any potential penalty interest and fines for non-compliance with the Croatian VAT legislation.

[ECF No. 33 at ¶ 11]. PTC and Seamless negotiated and entered into the Purchase Agreement based on several representations about their ability and experience in exporting equipment out of Croatia, however, according to CMC neither PTC nor Seamless were equipped to undertake the exportation obligations to which they had agreed. PTC and Seamless instead requested CMC's assistance in removing and exporting the assets to the United States. [ECF No. 33 at ¶ 13].

CMC further alleges that because assets sold inside Croatia would incur VAT liability for the seller, CMC sought confirmation from Seamless and PTC that the assets would be exported. PTC and Seamless both provided oral and written representations to this effect, but nevertheless confirmed that Seamless and PTC would reimburse Plaintiff for resulting VAT liability, if any. [ECF No. 33 at ¶ 15]. Thus, on or about January 18, 2014, the parties executed a Side Agreement to the Purchase Agreement ("Side Agreement"), memorializing Seamless' and PTC's representations that the assets would be exported and VAT liability, if any, would be reimbursed to CMC. A copy of the Side Agreement is attached to the Amended Complaint as Exhibit B. [ECF No. 33-2 at ¶ 16].

Thereafter, CMC continued to maintain a Croatian entity at a significant cost to CMC, in order to assist Seamless and PTC with making required governmental filings, identifying and

obtaining necessary documentation and in exporting the assets. [ECF No. 33 at ¶ 17]. Under the terms of the agreements, Seamless and PTC agreed to pay CMC $6.65 million (the purchase price of the assets) plus an estimated $780,262.24 (attendant VAT liability). [ECF No. 33 at ¶ 19]. CMC alleges that Seamless and PTC have failed to reimburse CMC for the amount of the VAT liability and other expenses due and owing. [ECF No. 33 at ¶ 20]. CMC estimates it is owed $332,500 for the purchase price in addition to the VAT liability, which it has demanded in writing on June 13, 2014. [ECF No. 33 at ¶ 22].

CMC further alleges that contrary to Seamless' and PTC's earlier representations on which Plaintiff relied in entering into the Purchase Agreement and Side Agreement, Seamless and PTC planned to export 50% (by weight) of the assets. The remainder would instead be sold or scrapped inside Croatia, thereby incurring VAT liability. This revelation only came after CMC had become largely responsible for exportation under the Side Agreement and was contrary to Seamless' and PTC's initial representations about the amount of assets to be exported. CMC avers that had it known that Seamless and PTC would choose to sell or scrap so many assets inside Croatia, thereby incurring such large amounts of VAT liability, CMC would have been unwilling to fully accommodate Seamless and PTC. [ECF No. 33 at ¶ 23].

CMC alleges that PTC promised or guaranteed to pay the amounts due and owing to CMC under the agreements, used its control over the deal to defraud CMC, and that "Seamless' corporate form should be disregarded when the Court adjudicates this action." [ECF No. 33 at ¶ 24]. In support of these allegations CMC attaches to the Amended Complaint various correspondence, including a wire transfer from PTC's former identity PTC Alliance Holdings Corp., wherein PTC paid CMC $332,500 owed on the purchase price of the assets [ ECF No. 33 at ¶ 25], as well as a letter from PTC's General Counsel David Sargent (also general counsel to

Seamless) purporting to be from the entire PTC Group in which Mr. Sargent acknowledged "**PTC**'s obligation to make a payment regarding the VAT will arise when the government of Croatia makes its determination as to how much VAT will be refunded to CMC." [ECF No. 33 at ¶¶ 25-27, 29] (emphasis added). CMC alleges that Attorney Sargent intended to, and in fact did, create the impression that PTC would assume primary responsibility for, and/or would guarantee, the outstanding amount of VAT liability in place of Seamless and would pay the VAT liability within the contractually agreed upon timeframe of thirty days' notice of the VAT liability being owed. [ECF No. 33 at ¶¶ 30, 31]. According to CMC, these representations were intended to induce, and in fact did induce, Plaintiff to refrain from more aggressively pursuing repayment for VAT liability in 2014. [ECF No. 33 at ¶ 33]. PTC's course of conduct was also intended to, and in fact did, allow it to profit from selling or scrapping assets all while CMC was left with the VAT liability that PTC knew Seamless could and would never actually pay and which CMC was led to believe would not even exist in the first instance. [ECF No. 33 at ¶ 34].

Beginning December 9, 2014 and throughout February, 2015, the parties exchanged correspondence and documentation regarding VAT liability that existed for the amount of assets sold or scraped in Croatia, which was due under the agreements by January 9, 2015. [ECF No. 33 at ¶ 36]. Attorney Sargent acknowledged receipt and gave the firm impression that payment would be forthcoming in short order. [ECF No. 33 at ¶ 38]. It is further alleged that Attorney Sargent e-mailed a payment summary to Plaintiff on February 4, 2015 [Exhibit J to Amended Complaint], from his PTC Group Holdings Corp. e-mail address in which he agreed on the amount due and owing to CMC for VAT liability and expenses as $780,626.24. The e-mail explicitly offered a new guarantee by PTC, i.e. that "**we** will ...pay the amount [of VAT liability] by wire transfer ... thirty days after we reach agreement on the total amount due." (emphasis

added).  This new promise, according to CMC, was separate from and different than the original payment term set forth in the Purchase Agreement and Side Agreement, i.e., 30 days from notice of the Croatian government's failure to pay a portion of VAT refund.  CMC characterizes this as a separate guarantee being offered by PTC, and evidence of PTC's calculated plan to induce Plaintiff to refrain from pursuing Plaintiff's rights under the agreements.  The e-mail bore the signature block of Mr. Sargent as General Counsel for PTC and made reference to PTC's obligation to pay.  [ECF No. 33 at ¶ 40].  CMC agreed to the guarantee and reconfirmed the VAT liability, and set forth the amount of expenses due and owing to CMC as $31,722.17.  [ECF No. 33 at ¶ 41].

Despite CMC's attempts to reach defendants, no communication was received after CMC's inquiry on February 25, 2015 [ECF No. 33 at ¶ 42].  On April 27, 2015, CMC received notice of the Chapter 11 filing by Seamless, and CMC now alleges that Seamless was merely a tool that PTC used to manipulate and intentionally damage Plaintiff to enrich itself at Plaintiff's expense and that Seamless was grossly undercapitalized when it conducted business with CMC. [ECF No. 33 at ¶ 44].  Defendants have not paid the money that they promised to pay CMC under the Purchase Agreement and Side Agreement. [ECF No. 33 at ¶ 45].  CMC demands judgment in the amount of $780,626.24 plus all other amounts due and owing under the contracts at issue, plus interest, punitive damages, and all other legal and equitable relief to which it may be entitled.

Count I alleges breach of express contract against Seamless.  (This Count is not subject to the pending motion.)  Count II alleges piercing the corporate veil and names, apparently erroneously, only Seamless as Defendant.  PTC nevertheless moves to dismiss it.  The remaining Counts name PTC only as defendant and are:  breach of express contract (Count III), breach of

contract implied in fact (in the alternative) (Count IV), contract implied-in-law/unjust enrichment (in the alternative) (Count V), promissory estoppel (in the alternative) (Count VI), interference with contractual relations (in the alternative) (Count VII), and deceit and/or fraud (in the alternative) (Count VIII).

Defendant PTC asks the Court to dismiss Counts II-VIII of the Amended Complaint because CMC has failed to state any plausible claim for relief against PTC, and further has failed to plead its claim asserting fraud and/or deceit with the particularity required under Rule 9(b).

### B.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Insurance  Brokerage Antitrust Litig*., 618 F.3d 300, 314 (3d Cir. 2010).

In *Iqbal*, the Court laid out a two-part approach to reviewing a motion to dismiss under

Rule 12(b)(6). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Id.; Phillips*, 515 F.3d at 233 (quoting *Twombly,* 550 U.S. at 563 n.8). Second, the court must determine whether the complaint "states a plausible claim for relief, . . . [which is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678. Only if "the '[f]actual allegations...raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir. 1991)).

To determine the sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

As noted *supra*, CMC has attached numerous documents to its Amended Complaint. Generally, a district court may not consider matters outside of the Complaint when ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) . . ., matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). An exception to this rule exists whereby courts may consider, for Rule 12(b)(6) purposes: (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). While PTC Defendant has not attached exhibits to its motion, there are numerous public records concerning the bankruptcy proceedings related to the matters herein.

If a complaint is subject to Rule 12(b)(6) dismissal, the court must permit a curative amendment unless such an amendment would be inequitable or futile. *See Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). We must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

With this standard of review in mind, we now turn to whether CMC has stated a claim upon which relief can be granted as to Counts II-VIII.

## C. Discussion

The parties agree that Pennsylvania law applies to plaintiff's tort and quasi-contract claims. According to PTC, New York law applies to the contract claims, but even so, the outcome would be the same whether Pennsylvania or New York law governs.

### 1. Count III: Breach of Contract

Defendant PTC first argues that Plaintiff pleads no plausible breach of contract. Under New York law, a breach of contract requires the following elements: 1) the existence of an agreement, 2) adequate performance by plaintiff, 3) breach by the defendant, and 4) damages.

*Swan Media Grou, Inc. v. Staub*, 841 F. Supp.2d 804, 807 (S.D. N. Y. 2012). PTC asserts that it

was not a party to the Purchase Agreement or the Side Agreement, and without a requisite

contractual duty, there is no claim, citing *Gameologist Group, LLC v. Scientific Games Int'l*, 838

F. Supp.2d 141, 166-67 (S.D. N.Y. 2011). As for the allegation that PTC somehow expressly

guaranteed Seamless' obligations under the Purchase Agreement and/or Side Agreement, PTC

argues that under New York law, consideration for the guaranty must be expressly or impliedly

stated in the instrument, and the instrument must be delivered to, and accepted by, the

guarantor." *Cavendish Traders, LTD. v. Nice Skate Shoes, Ltd.,* 117 F.Supp.2d 394, 400 (S.D.

N.Y. 2000). According to PTC, correspondence relating to Seamless' duties under the contracts

was written by Mr. Sargent using his corporate signature block, and even if the correspondence

references "PTC's obligation" to pay the VAT, it does not state a claim. PTC argues that Sargent

was adhering to the terms of the Purchase Agreement and Side Agreement, both of which

required that "notices, announcements, summons and/or communications" be directed to him, as

counsel to both entities. [ECF No. 33 at ¶ 26]; Ex. A at § 12, Ex. B § 6. PTC further argues that

the documents attached to the Amended Complaint show that "PTC" was shorthand for

Seamless, as CMC had itself used this shorthand; Mr. Sargent's use of the name reflects CMC's

prior reference, and the Court is not required to accept plaintiff's unreasonable reference, citing

*Rivoli v. Gannett Co.,* 327 F. Supp.2d 233, 239 (W.D. N. Y. 2004).

Similarly, under Pennsylvania common law, a cause of action for a breach of contract

requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty

imposed by the contract and (3) resultant damages." *CoreStates Bank v. Cutillo*, 723 A.2d 1053,

1058 (Pa. Super. 1999). PTC argues that under the Pennsylvania Statute of Frauds, unless the

promise appears in a writing signed by the promisor, an action may not lie against a promisor on

a promise to repay the debt of another, citing 33 Pa. Stat. Ann § 3 (West).[1]

In response to these arguments, CMC argues that it has alleged written documentation from Sargent which shows PTC's agreement to guarantee Seamless' obligations under the Purchase Agreement and Side Agreement. CMC acknowledges that the New York General Obligations law provides that "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: … [i]s a special promise to answer for the debt, default or miscarriage of another person." N.Y. Gen. Oblig. § 5-701(a)(2). CMC avers that electronic communications, specifically the several writings authored by Sargent, can be sufficient to satisfy the writing requirement either under N.Y. Gen. Oblig. § 5-701(b)(3) or the Pennsylvania Statue of Frauds, and if PTC wishes to refute that, it may do so in an Answer, discovery, and if necessary, at trial. CMC notes that in his July 11, 2014 correspondence on PTC Group letterhead, Sargent states that Sargent acknowledged that "once CMC receives this VAT refund payment from the government of Croatia, **PTC** will then have 30 days to pay CMC the difference between the amount of the refund and the amount of the VAT paid by CMC." [ECF No. 33 at ¶ 28, ECF No. 33-5 ("Ex. E")] (emphasis added). And after the government of Croatia determined the VAT refund that would be paid to CMC, CMC again sent correspondence to PTC concerning the VAT liability, to which Sargent responded via email that "we will . . . pay the amount [of VAT liability] by wire transfer . . . thirty days after we reach agreement on the total amount due." [ECF No. 33 at ¶ 40, ECF No. 33-10 ("Ex. J")]. PTC disputes this and argues that the correspondence shows that CMC itself had also repeatedly

---

[1] The Pennsylvania Statute of Frauds: "No action shall be brought ... whereby to charge the defendant ... to answer for the debt or default of another unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged herewith, or some other person authorized by him." 33 P.S. § 3.

referred to Seamless as "PTC" and thus, defeats the claim that Mr. Sargent's correspondence operated to create new guaranty obligations on PTC's part.

PTC argues that CMC has not plausibly alleged that PTC guaranteed payment by Seamless to advance its own pecuniary or business interest, under the "leading object" or "main purpose rule", citing *Packaging Engineering, LLC v. Werzalit of America* 2008 WL 4889654 *4 (W.D. Pa. Nov. 12, 2008). PTC states that the allegation that PTC promised to pay debts that it "knew Seamless could and would never actually pay" shows that the alleged guaranty would undermine PTC's financial interests.

We note that CMC has pled the existence of oral promises by PTC to guarantee Seamless' obligations under the Purchase Agreement and the Side agreement, which it claims satisfies the main purpose exception to the Statute of Frauds under Pennsylvania law. [ECF No. 33 at ¶ 15.]

> Th[is] suretyship provision of the Statute of Frauds, however, does not apply if the main object of the promisor is to serve his own pecuniary or business purpose.... This exception, known as the "leading object" or "main purpose" rule, "applies whenever a promisor, in order to advance some pecuniary or business purpose of his own, purports to enter into an oral agreement even though that agreement may be in the form of a provision to pay the debt of another.

*Webb Mfg. Co. v. Sinoff*, 674 A.2d 723, 725 (Pa.Super.1996) (quoting *Biller v. Ziegler*, 593 A.2d 436, 440 (Pa.Super.1991)).

It is respectfully recommended that the motion to dismiss be denied in this regard, as plaintiff has sufficiently pled the breach of contract claim by alleging facts suggestive of the proscribed conduct. It is too early in the litigation to ascertain what whether the main purpose exception has been met; whether Mr. Sargent was acting on behalf of Seamless or PTC remains to be seen. At the very least, CMC should be permitted discovery on this issue, and PTC should

be afforded an opportunity to present this line of argument on summary judgment after the record has been fully developed.

Next, we turn to PTC's argument that CMC's cause of action for breach of express contract must fail because CMC has failed to plead the existence of consideration sufficient to support PTC's guaranty, noting that CMC's promise to continue doing business with Seamless is merely an agreement to perform existing duties under the contracts and cannot support a separate guaranty with PTC. In response, CMC clarifies its position, noting it has alleged that in reliance upon PTC's guaranty, CMC refrained from "more aggressively pursuing prepayment for VAT liability in 2014" which CMC views as sufficient consideration. [ECF No. 33 at ¶ 33]. CMC notes that "[a]n agreement by which the owner of all stock in a corporation promises to pay the debt of the corporation to the creditor in consideration of the creditor's forbearance in not instituting legal proceedings on the debt is a new undertaking supported by consideration and not within the statute" citing 25 P.L.E Frauds, Statute of, § 6, citing *Eastern Wood Products Co. v. Metz*, 89 A.2d 327, 329-30 (Pa.1952) and New York law, e.g. *C&D Development, Inc. v. Sea Breeze Development*, LLC 874 N.Y.S.2d 560 (N.Y. App. Div. 2009).

In response, PTC acknowledges that forbearance to assert a valid legal right may constitute sufficient consideration, but plaintiff has failed to assert a bargained for exchange, in other words, that PTC and CMC discussed and agreed upon CMC's decision to refrain from filing suit. *Cardamone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233 (Pa. Super. 1978). This objection is well founded, and plaintiff should be permitted to amend its allegations accordingly.

It is therefore respectfully recommended that the motion to dismiss CMC's contract claim be granted and CMC may amend its complaint so as to state alleges sufficient consideration in addition to the allegation that it refrained from more aggressively pursuing prepayment for VAT

liability in 2014, in reliance on PTC's guaranty.  [ECF No. 33 at ¶ 33].

### 2. Count 2. Piercing corporate veil

Next, PTC argues that Count II of the Amended Complaint should be dismissed for failure to state a claim.

At the outset we note that PTC objects to the claim of piercing the corporate veil because relief cannot be had against PTC  as it is not a named defendant to this Count, citing *Saint Annes Dev. Co. v. Trabich*, 2012 WL 1361298, at *1 (E.D. N.Y. Apr. 18, 2012).   In response, CMC notes that the allegations are clear that should Seamless' veil be pierced, the target of liability would be PTC and PTC is on notice of the claim against it.  Regardless, CMC out of an abundance of caution requests we grant it leave to amend, and it is recommended that it be permitted to do so.

In addition, PTC argues that the claim is deficient because CMC merely recites the legal elements of the claim, and that any of the facts pled do not show that Seamless ignored corporate formalities or was a façade for PTC.  The Third Circuit test for alter ego liability requires the following factors for consideration: (1) gross undercapitalization, (2) failure to observe corporate formalities, (3) non-payment of dividends, (4) insolvency of the debtor corporation at the time, (5) siphoning of corporate funds by the dominant stockholder, (6) absence of corporate records, and (7) the use of the corporation as a façade.  *Pearson v Component Tech. Corp.*,  247 F.3d 471, 484-85 (3d Cir. 2001). The plaintiff also must show that the corporate form was abused, with a showing akin to fraud. *Kaplan v. First Options of Chicago,* 19 F.3d 1503, 1521-23 (3d Cir. 1994). In order to successfully allege a "single economic entity," a plaintiff need not allege facts to support all seven of the factors. *See, e.g., MIG Invs. LLC v. Aetrex Worldwide, Inc.,* 852 F. Supp. 2d 493, 514 (D. Del. 2012) (holding that pleading three of the seven factors sufficed to

state a claim).

After a careful review of the seven factors necessary to assert a claim of alter ego liability, and the allegations in the Amended Complaint, it is respectfully recommended that the motion to dismiss Count II be denied. CMC has alleged Seamless filed for bankruptcy rather than pay its legitimate debts. [ECF No. 33 at ¶ 44]. CMC has also pled that PTC paid Seamless' legitimate corporate debt out of PTC's corporate bank account, [ECF No. 33 at ¶ 25], that Attorney Sargent utilized his corporate signature block bearing the name of PTC (as opposed to just Seamless), and he was unclear in his verbal dealings with CMC in working on the deal [ECF No. 33 at ¶¶ 25, 40]. Additionally, CMC has also sufficiently alleged the overall element of injustice or unfairness is present: CMC alleges PTC's use of Seamless was a sham designed to attempt to shield PTC from liability for legitimate corporate debts. In the end, if these allegations are proven, then allowing PTC to escape liability by hiding behind the corporate veil would be unfair and unjust.

We are aware of PTC's argument that the veil-piercing claim is undermined by the fact that Seamless' bankruptcy caused great financial harm to PTC as well, insofar as PTC itself was also an unsecured creditor of Seamless with an unfulfilled claim for $96 million in intercompany loans. *In re PTC Seamless Tube Corp.*, No. 15-21445-TPA (Bankr. W.D. Pa.) [ECF No. 317 at 20]. Yet at this juncture, given the well-pleaded factual allegations as summarized *supra*, and relevant case law, dismissal of the piercing of the corporate veil is premature, as they plausibly give rise to an entitlement for relief. *See Brocious Trucking, Inc., v. BFL, Inc.,* 2010 WL 569559, *4 (W.D. Pa. Feb. 11, 2010), (citing *Orion Power Midwest, L.P. v. American Coal Sales Co.*, 2008 WL 4462301, *1 (W.D. Pa. Sept. 30, 2008) and *Grunblatt v. Unum Provident Corp.*, 270 F.Supp.2d 347, 352 (E.D. N.Y. 2003) (veil-piercing test is based on fact-intensive, multi-

factor test which is not amenable to resolution on a motion to dismiss and of necessity leads to discovery). Out of an abundance of caution, this cause of action should proceed to discovery.

It is therefore respectfully recommended that PTC's motion to dismiss Count II be denied.

### 3. Counts IV, V and VI: breach of contract implied in fact, breach of contract implied in law/unjust enrichment and promissory estoppel

PTC next argues that CMC has not stated plausible claim for implied or quasi contract or promissory estoppel. The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written. *Highland Sewer & Water Auth. v. Forest Hills Municipal Auth.*, 797 A.2d 385, 390 (Pa. Commw. 2002). "[T]he pleading of a written contract is only applicable to claims for breach of express contract" and there is no similar requirement for claims of implied contract. *Byrne v. Cleveland Clinic*, 684 F.Supp.2d 641, 658 (E.D. Pa. 2010).

The doctrine of promissory estoppel is, of course, only employed to enforce a promise unsupported by consideration, in order to avoid a manifest injustice. *Utility Appliance Corp. v. Kuhns*, 393 Pa. 414, 417, 143 A.2d 35, 37 n.4 (1958). In order for the doctrine to apply, however, the following criteria must be met: (1) the promisor must make a promise that he should reasonably expect to induce a definite action or forbearance on the part of the promisee; (2) the promise must actually induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Cardamone* 384 A.2d at 1233 (Pa. Super. 1978).

PTC argues CMC was not contractually required to maintain a Croatian entity. Furthermore, PTC asserts that any alleged duty to maintain a Croatian entity would stem from the Purchase Agreement or Side Agreement, the validity of which is undisputed, and therefore, CMC cannot plead unjust enrichment, citing *Constar, Inc. v. National Distrib. Ctrs.*, 101 F.

Supp.2d 319, 324 (E.D. Pa. 2000). PTC furthermore argues that CMC cannot plead promissory estoppel based on PTC's alleged failure to perform actions encompassed by the Purchase Agreement and Side Agreement, citing *Sentry Paint Tech., Inc. v. Topth, Inc.*, 2008 WL 4787579, at *12 (E.D. Pa. Oct. 31, 2008) and *Inversen Baking Co. v. Weston Foods, Ltd.*, 874 F.Supp. 96, 102 (E.D. Pa. 2005). As described supra, PTC notes that it had no duty it perform under contracts to which it was not a party, it made no separate guaranty, and an alleged failure to perform duties encompassed by written agreements is incompatible with this equitable remedy, which presumes the absence of an enforceable contract. Moreover, PTC argues that it made no promise to pay the VAT, and even if it did, CMC undertook no action in reliance that was not already required by its contracts with Seamless. *Luther v. Kia Motors Am., Inc.*, 676 F. Supp.2d 408, 421 (W.D Pa. 2009).

The Amended Complaint alleges that PTC was unjustly enriched because it sold assets at CMC's expense and because CMC continued it existence in Croatia and otherwise suffered as a result of its alleged forbearance in reliance on PTC's representations. These causes of action are pled in the alternative, as is permissible under the rules. It is therefore respectfully submitted that the motion to dismiss the claims for breach of contract implied-in-fact, promissory estoppel and unjust enrichment be denied.

### 4. Gist of the Action and Economic Loss

PTC asserts that CMC's tort claims are barred by the gist of the action and economic loss doctrines. In Pennsylvania, the "gist of the action" doctrine "'maintain[s] the conceptual distinction between breach of contract and tort claims[,]' and precludes plaintiffs from recasting ordinary breach of contract claims as tort claims." *McShea v. City of Phila.*, 995 A.2d 334, 339 (Pa. 2010) (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.,* 811 A.2d 10, 14 (Pa. Super. 2002)).

The Pennsylvania Superior Court in *eToll* found that the "gist of the action" doctrine precludes tort actions "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." *eToll,* 811 A.2d at 19 (internal citations and internal quotation marks omitted); *see also Bruno v. Bozzuto's, Inc.,* 850 F.Supp.2d 462, 468–69 (M.D. Pa. 2012) (dismissing claims for negligent and fraudulent misrepresentation under the "gist of the action" doctrine because these claims arose from contractual duties).

The Pennsylvania Superior Court has explained that "[t]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Redevelopment Auth. v. Int'l Ins. Co.,* 685 A.2d 581, 590 (Pa. Super. 1996) (en banc). Stated differently, the "gist of the action" is contractual where "the parties' obligations are defined by the terms of contracts, and not by the larger social policies embodied by the law of torts." *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 104 (3d Cir. 2001).

In general, the economic-loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir.1995). In *Bohler-Uddeholm America, Inc.* and *Pediatrix Screening, Inc.,* the United States Court of Appeals for the Third Circuit noted that the gist of the action doctrine "is a better fit" than "the economic-loss doctrine" for a non-products liability case. *See Bohler-Uddeholm Am., Inc.*, 247 F.3d at 104 n.11 ("The 'gist-of-the-action' test is a better fit for this non-products liability case."); *see also Pediatrix Screening, Inc.,*

602 F.3d 541,  544 & n.5 (3d Cir. 2010) ("[T]he parties have used "gist of the action" and "economic loss" interchangeably...'[g]ist of the action' is a better fit, and we will use it in this opinion."). Accordingly, because this is not a products liability case, the Court will consider only whether the gist of the action doctrine applies to bar Plaintiff's claims. *Graham Packaging Company, L.P. v. Transplace Texas, L.P.*, 2015 WL 8012970 (M.D. Pa. December 7, 2015), citing*, Maryland Cas. Co. v. Preferred Fire Prot., Inc.*, No. 14-245, 2014 WL 4218715, at *4 (W.D. Pa. Aug. 25, 2014) (explaining that the "economic loss doctrine is reserved for those cases involving products liability"); *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. 11-4568, 2011 WL 6046923, at *7 (E.D. Pa. Dec. 6, 2011); *Mikola v. Penn Lyon Homes, Inc.,* No. 07-0612, 2008 WL 2357688, at *7 (M.D. Pa. June 4, 2008).

As noted previously, CMC has pled both contract and tort causes of action in the alternative, which is permissible under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.") and Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.") Where it is not clear whether a claim is properly brought as a breach of contract or a tort, and these claims are pled in the alternative, it is improper to dismiss the tort claims on the basis of the "gist of the case" doctrine. *See Mill Run Assocs. v. Locke Prop. Co*., 282 F. Supp.2d 278, 290-91 (E.D. Pa. 2003) (declining to dismiss Plaintiff's tort claims based on "gist of the action" doctrine where it was "unclear at this stage of litigation whether the "gist" of the action sounds in contract or tort . . ." and the contract terms were in dispute.)  District courts in Pennsylvania have noted that caution should be exercised in determining the "gist of an action"

at the motion to dismiss stage. *Id.*; *Southersby Dev. Corp. v. Twp. of S. Park*, 2015 WL 1757767, at *16 (W.D. Pa. April 17, 2015); *Interwave Tech., Inc. v. Rockwell Automation, Inc.*, 2005 WL 3605272, at *13 (E.D. Pa. Dec. 30, 2005); *see also Weber Display & Packaging v. Providence Wash. Ins.* Co., 2003 WL 329141, at *3–4 (E.D. Pa. Feb. 10, 2003) (noting that it is often premature to determine the gist of a claim before discovery has been taken).

Accordingly, it is respectfully recommended that the Court deny the motion to dismiss based upon on the gist of the action theory and economic loss doctrines.

### 5. Counts VII and VII: interference with contractual relations and deceit/fraud

PTC argues that the Amended Complaint fails to sufficiently allege tortious interference and fraud because it fails to show false representation by PTC, as opposed to Seamless. The elements of fraud (alleged here at Count VII) under Pennsylvania law are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Bouriez v. Carnegie Mellon University*, 585 F.3d 765, 771 (3d Cir. 2009) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)). Federal Rule of Civil Procedure 9 requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The United States Court of Appeals for the Third Circuit has explained that this Rule requires a party alleging fraud to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). This requires the plaintiff to allege "the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

Plaintiff has alleged that PTC implied that "it and/or Seamless . . . could export the assets and that it and/or Seamless would pay Plaintiff under the agreements." [ECF No. 33 at ¶ 81]. CMC alleges that "[g]iven PTC's actions and silence almost immediately after making the statements it made, and given Seamless' precipitous path to bankruptcy, PTC undeniably knew its statements were false when they were made and undeniably made them with the intention that Plaintiff would act in a manner damaging to Plaintiff. PTC's statements amounted to fraudulent utterances made with an intention to induce Plaintiffs action or inaction. [ECF No. 33 at ¶ 82]. Thus, it appears that CMC has alleged particular representations, with attached documentary support of misrepresentations. Moreover, the attached series of correspondence provide the requisite specificity.

A claim for tortious interference requires: (1) a contractual or prospective contractual relation between the complainant and a third party; (2) purposeful action by the defendant, specifically intended to harm the existing relation or to prevent a prospective relation from occurring; (3) absence of privilege or justification by the defendant; and (4) legal damage resulting from the defendant's conduct. *Bantum v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 3020411, at *4 (E.D. Pa. July 23, 2012). PTC argues that the factual allegations are insufficient, and that CMC merely recites the elements of this claim, citing to the Amended Complaint at ¶ 77. Yet CMC has also alleged that when communicating with CMC, Sargent was either contracting with CMC on behalf of PTC or – in the alternative – he and PTC were simply intentionally or recklessly interfering with the contractual relationship between CMC and Seamless. CMC's pleading, in the alternative, can be read to aver that PTC, through its corporate counsel, Sargent, caused Seamless (the captive subsidiary) to stall, lie, and delay payment to CMC without any justification to do so.

It is therefore respectfully recommended that the motion to dismiss Counts VII and VIII be denied.

## III.  CONCLUSION

For the forgoing reasons, it is respectfully recommended that Defendant's Motion to dismiss [ECF No. 37] be granted in part and denied in part, and that Plaintiff CMC be permitted to file curative or substantive amendments as stated previously, as to Counts II and III.

In accordance with Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are granted fourteen days  to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: May 19, 2016

Respectfully submitted,

/s/ Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Cc:     Hon. Joy Flowers Conti
        Record counsel